187 So.2d 316 (1966)
John Lamar REID and Mrs. Juanita Reid
v.
W.H. HORNE and Mrs. Quinn Nell Horne.
No. 43970.
Supreme Court of Mississippi.
June 6, 1966.
Granville Jones, Dunn & Singley, Meridian, for appellants.
Gerald Adams, Joe R. Odom, Meridian, for appellees.
SMITH, Justice.
The appellees, W.H. Horne and his wife, Mrs. Quinn Nell Horne, filed a bill in the Chancery Court of Lauderdale County against John Lamar Reid and Mrs. Juanita Reid, also husband and wife, asking that the court decree that they had acquired "an irrevocable license" to cross the lands of the latter under a parole agreement, and that appellants be enjoined from interfering with its enjoyment.
Appellants answered and also filed a general demurrer. The court heard the case upon the bill, exhibits and the demurrer. A decree was entered temporarily enjoining appellants as prayed and overruling the demurrer, but granting an appeal to this Court for the purpose of settling all of the controlling principles of the case.
The facts alleged in the bill, in substance, are that the Hornes were considering the purchase of a tract of land from a third party, which they proposed to use for several *317 purposes, including the construction thereon of a commercial lake. This land was bounded by the lands of others, including on one side, the lands of the Reids.
Horne approached Reid and told him of the situation, with the alleged result that Reid orally agreed to allow the appellees to cross his land and to build a road thereon for that purpose, connecting with a circular drive partly built and being built by appellants. There was a statement by Horne in the conversation that the Reids could fish in the lake when it was built.
It was not alleged that Mrs. Reid or Mrs. Horne were parties to this conversation, although it is stated at another place in the bill that when the road was constructed, Mrs. Reid was present and consented thereto by "actions as well as words."
Horne asked Reid "to put the agreement in writing," but Reid declined to do so, saying that his "word was his bond."
The bill further recites that appellees bought the tract of land, employed an engineer to lay out their access road on the the Reid property, and also spent some of their own money and contributed "most of the culverts" in constructing a part of the Reids' own circular drive on the Reid property. This was alleged to have been the consideration for the parole grant of the irrevocable license. The bill states that the connecting access road was constructed on appellants' land and that appellees used it for a time. Appellees continued to use the road until, for reasons unclear from the bill, appellants requested them to reduce the agreement to writing. This request was made by letter, submitting to appellees two instruments, prepared by appellants, one to be executed by appellees granting appellants certain fishing and "littoral" rights with respect to the lake, and the other to be executed by appellants conveying the easement to appellees in fee simple. These unexecuted instruments, with the letter of transmittal, are made exhibits to the bill. Also exhibited with the bill is appellees' letter rejecting this proposal, together with appellants' reply thereto, revoking the license.
The statement in the bill of conversations between Horne and Reid, relied upon as having effected a parole grant by Mr. and Mrs. Reid of "an irrevocable license" over their lands can only be described as nebulous and lacking in specificity as to details. The exhibits strongly indicate that there was never a meeting of the minds of the parties upon several essential aspects of the alleged agreement.
However, it is not necessary to decide whether the terms of the parole agreement was sufficiently definite to make it enforceable, if otherwise valid. The threshold question, upon which the right of appellees to an irrevocable license or easement over or across the lands of appellants, is whether the parole grant upon which they rely is within the Statute of Frauds, and, therefore, is unenforceable.
The right claimed and sought to be established and enforced by the bill, while referred to (as a conclusion of law by the pleaders) as an "irrevocable license," actually would amount to an easement across appellants' lands, not only to be used by appellees' family, their guests and invitees, but by patrons of their commercial lake project as well.
In 37 C.J.S. Statute of Frauds § 116, at 608 (1943), it is stated:
"A perpetual or irrevocable license to do an act or series of acts upon the land of another creates an interest in lands in the nature of an easement, and must be in writing. * * *"
It is further stated in 37 C.J.S. Statute of Frauds § 70, at 578 (1943):
"An easement is an interest in land within the meaning of the statute of frauds. So, in general, contracts with reference to an easement right, or a right in the nature of an easement, are subject to the provisions of the statute, * * *"
*318 The divergent views of the parties as to the terms of the parole agreement, as reflected by the bill and the several exhibits thereto, well illustrate the wisdom of the requirement that contracts for the sale of lands shall be in writing, so that errors due to the frailty of human memory, or honest misunderstanding, as well as those resulting from downright fraud, may be obviated.
Moreover, it appears to be the rule in this state, that neither part performance of an oral contract with respect to the sale of land nor the expenditure of money in reliance upon it are sufficient to take it out of the Statute of Frauds. Wells v. Brooks, 199 Miss. 327, 24 So.2d 533 (1946); Milam v. Paxton, 160 Miss. 562, 134 So. 171 (1931); Howie v. Swaggard, 142 Miss. 409, 107 So. 556 (1926); Niles v. Davis, 60 Miss. 750 (1883); Fisher v. Kuhn, 54 Miss. 480 (1877); McGuire v. Stevens, 42 Miss. 724 (1869); Hairston v. Jaudon, 42 Miss. 380 (1869); Catlett v. Bacon, 33 Miss. 269 (1857); Box v. Stanford, 21 Miss. 93 (1849).
In Belzoni Oil Co. v. Yazoo & M.V. Ry. Co., 94 Miss. 58, 47 So. 468 (1908), this Court said:
"* * * That line of cases which holds that, where one has entered under a license and expended large sums for improvements, etc., the other, the licensor, may not revoke the license without refunding the money so expended, this court has declined to follow. * * * In Beck's case, supra, Judge Campbell, speaking for the court, expressly held that, though this doctrine might obtain elsewhere, it had no footing in our jurisprudence, and that a mere license, even for a valuable consideration and where great expense had been incurred by the licensee, was revocable at the will of the licensor." (94 Miss. at 75, 47 So. at 472.)
In Nelson v. Nelson, 193 Miss. 136, 8 So.2d 507 (1942), this Court reviewed its decisions on this subject, including the Belzoni case, supra; Beck v. Louisville, N.O. & T.R.R. Co., 65 Miss. 172, 3 So. 252 (1887); Binder v. Weinberg, 94 Miss. 817, 48 So. 1013 (1909); and, Agnew v. Jones, 74 Miss. 347, 23 So. 25 (1896), and distinguished those cases which were urged as being in conflict with the Belzoni case.
In the Nelson case, the Court said:
"There is language in Agnew v. Jones, 74 Miss. 347, 23 So. 25 which conflicts with the holding in Beck v. Louisville, etc., R. Co., supra, but the question there presented was very different from that presented in the Beck case and here, and it does not appear that the court there intended to overrule the Beck case and clearly did not think that case had been overruled when it decided the Belzoni Oil Co. case, for the Beck case was there cited and relied on." (193 Miss. at 152-153, 8 So.2d at 508.)
In the Nelson case, the Court upheld the action of the chancellor in sustaining a demurrer to the bill of complaint there under review, which sought to enforce an oral license alleged to have been granted complainant to construct houses upon the land of the defendant.
In the case now before us, it affirmatively appears from the allegations of the bill that both parties were fully aware that the agreement should have been reduced to writing. First, appellee Horne asked appellant Reid to put it in writing, and he declined; later, Reid prepared instruments containing his version of the agreement and submitted them to Horne, who rejected them.
The basis upon which appellees' suit must succeed, if at all, is the parole agreement. Upon the face of the bill, this agreement was within the Statute of Frauds and unenforceable. For that reason, the court should have sustained the demurrer to the bill. Fireman's Fund Ins. Co. v. Williams, 170 Miss. 199, 154 So. 545 (1934).
*319 The bill did not present the question as to whether appellees might have recovered sums actually expended by them, if any, in reliance upon a parole agreement, such as that alleged to have been made, in constructing improvements upon appellants' lands, of which the latter actually received the benefit, and that question is not before this Court.
The decree granting the injunction and overruling the demurrer is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.