ROSENBLATT *v.* ESCHER.

(Division A. Jan. 9, 1939.)

[185 So. 551. No. 33411.]

Jones & Stockett and W. Roger Jones, all of Woodville, for appellant.

Maxwell Bramlette, of Woodville, for appellee.

Argued orally by **W. Roger Jones**, for appellant, and by **Maxwell Bramlette**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellant, Mrs. Adeline H. Rosenblatt, filed a bill for an injunction against J. A. Escher. The gravamen of the bill was that for a long time prior to the filing thereof, the appellee, Escher, had permitted his cattle to trespass upon the lands of appellant; that these trespasses were repeated and continuous over a long period of time, and that the appellee persistently allowed his cattle to go upon the agricultural land of the appellant, and prayed an injunction restraining the appellee from allowing a continuance of the trespasses and depredations of the cattle upon her land. The answer set up a custom agreed to by many of the neighbors of Mrs. Rosenblatt to permit their cattle to roam at large upon the open range, and asserted that Mrs. Rosenblatt's eight acreage was small in comparison to the holdings of land of the parties to the agreed custom. The answer seemed further to set up the defenses that the appellant must do equity, had an adequate remedy at law, and did not come into court with clean hands. Upon the bill, answer, and proofs, the court below dismissed the bill.

Without detailing or abstracting the evidence, the record in this case discloses that the appellee, Escher, without restraint permitted his cattle to continually and frequently go upon the lands of the appellant without her permission, and over her protests. Her husband testified that he had sent to Escher fourteen written notices of the depredations and trespasses on the lands of his wife and to keep them off her land, that on several occasions he had taken up the cattle and allowed them to

be delivered to the appellee. He had charged something for taking them up on one or two occasions. He had undertaken to fence the appellant's land, but with reference to certain neighbors, they had by agreement allowed the cattle of each to remain on the lands of the other without a partition fence. He testified that a crop of beans had been destroyed by the cattle of Escher and other people, that after the filing of the bill as many as sixty-four head of cattle belonging to Escher had roamed upon his crops, which had been at the time planted. There is no showing that appellant joined in the agreement to permit the cattle to roam at large at will, or that she had joined in the violation of the law in that section by permitting her cattle to roam at large.

On cross examination appellant's husband, who managed the property, testified that they had about 700 acres of land which he called "secretion" lands, evidently meaning acquired by accretion, in the swamp, and that he had collected from owners of large herds of cattle money for the privilege extended those people to permit their cattle to graze upon the accretion lands. There is no showing in the record that these cattles, permissibly allowed to graze upon these lands, ever depredated upon the lands of other people. He had threatened to fence these accretion lands, but the neighbors had requested him not to so do, and had requested permission to have their cattle graze upon these lands.

Appellee's evidence was largely devoted to a description of the territory in Wilkinson County, and of the action of the neighbors in declaring and agreeing among themselves that they would permit the cattle to roam at large upon the range. There was no denial of the oft repeated trespasses by appellee's cattle upon the lands and crops of the appellant.

It cannot be debated in this case that the continued repeated acts of trespass which were done, and threatened to be continued by the very facts of the case, entitled the

appellant to appeal to equity for protection. The wrongful trespasses in violation of the law and the policy of this state in effect deprived the owner thereof of the use and peaceable enjoyment of her property. Appellee boldly asserts that the collections which appellant could have made from appellee by taking up the cattle and charging therefor by enforcing the controlling statutes would be more than appellant would realize from growing crops. In other words, the neighbor could manage his property in a different way for him and use it for his own benefit rather than the benefit of the owner thereof. This is to us a novel argument. Sec. 5441, Code of 1930, declares a state wide stock law to exist in all the territory of the State of Mississippi, and further provides that no person shall permit cattle to roam at large upon the open or unfenced lands of other persons, but shall keep such live stock confined in a safe enclosure, or upon his own land. Sec. 5442 and succeeding sections provide a remedy for taking up stock and declaring the owner liable for damages, and fixing the minimum thereof and the enforcement of the remedy. But the case presented by the bill and evidence shows that the owner of lands in this case, if confined to that remedy, would be constantly busy in its enforcement, and that the remedy would be wholly inadequate to protect her against repeated, and continued, trespasses, which had continued to the day of the filing of the bill and subsequently. We quote from the case of Warren Mills v. New Orleans Seed Company, 65 Miss. 391, 4 So. 298, 7 Am. St. Rep. 671, the following: ''and it may be laid down as general rule that, wherever the rights of a party aggrieved cannot be protected or enforced in the ordinary course of proceedings at law, except by numerous and expensive suits, equity may properly interpose, and afford relief by injunction. 1 High Inj. sec. 12; 1 Pom. Eq. Jur., sec. 245.

''Where trespass to property is a single act, and is temporary in its nature and effects, so that the legal

remedy of an action at law for damages is adequate, equity will not interfere; but if the trespass is continuous in its nature, and repeated acts of trespass are done or threatened, although each of such acts, taken by itself, may not be destructive, or inflict irreparable injury, and the legal remedy may therefore be adequate for each single act if it stood alone, the entire wrong may be prevented or stopped by injunction. 1 Pom. Eq. Jur., sec. 245; 3 Pom. Eq. Jur., sec. 1357.

"The separate remedy at law for each of such trespasses would not be adequate to relieve the injured party from the expense, vexation, and oppression of numerous suits against the same wrong-doer in regard to the same subject-matter. The ends of justice require, in such case, that the whole wrong shall be arrested and concluded by a single proceeding. And such relief equity affords, and thereby fulfills its appropriate mission of supplying the deficiencies of legal remedies."

We might multiply the cases, but the rule is aptly stated in the foregoing excerpt. There is no merit in the contention that the appellant in this case has not done equity or has not come into court with clean hands evidently based upon the proof that he permitted neighbors to use the detached accretion lands and collected from them for a permissive right to pasture cattle on these lands.

Even if it be conceded that a custom had been established in that neighborhood, or county, the inhabitants thereof would violate the law. Such custom and usage never prevails unless it is uniform, reasonable, and not contrary to law. The custom, if such it be, was unlawful. Shackelford v. New Orleans, J. & G. N. R. Co., 37 Miss. 202; Postal Telegraph-Cable Co. v. Floyd Willis, 93 Miss. 540, 47 So. 380; Fireman's Fund Insurance Co. v. Williams, 170 Miss. 199, 154 So. 545; Bank of Forest v. Capital National Bank, 173 Miss. 99, 160 So. 578, 101 A. L. R. 589; 17 Corpus Juris 449, par. 7.

The decree of the court below will be reversed and this court will grant a perpetual injunction against the appellee restraining and enjoining him from allowing and permitting his live stock and cattle from trespassing on the lands of the appellant.

Reversed, and decree here for appellant.