## DUMAS *v.* OWEN.

4-7047 · · 171 S. W. 2d 294

Opinion delivered April 26, 1943.

*Henry Stevens, Wendell Utley* and *J. B. Milham,* for appellant.

*Ezra Garner* and *Geo. M. LeCroy,* for appellee.

GRIFFIN SMITH, C. J. In a petition filed September 1, 1938, W. E. Owen asked Columbia chancery court to quiet his title to the property described. *Owen* v. *Dumas,* 200 Ark. 601, 140 S. W. 2d 101 (May 13, 1940.) Septem-

ber 26, 1940, Owen filed what he termed a response to motion for an accounting. The response had reference to a pleading of defendants to the action brought by Owen to quiet title, and was dated March 20, 1939. It was said in the motion for an accounting that the defendants ". . . on the statement of account, stand ready to pay all indebtedness that has accrued under the will." Cancellation of deeds from Louisa F. Owen to W. E. Owen was sought. Defendants to the Owen-Dumas case moved for appointment of a master. They amended their answer June 26, 1939.

On this record the trial court's action in cancelling W. E. Owen's deed to forty acres was affirmed, but the decree quieting his title to 200 acres was reversed.

After mandate had issued here in the Owen-Dumas case, and W. E. Owen's response had been filed, Elza Dumas and others petitioned this court to prohibit further proceedings, allegation being that Columbia chancery was without jurisdiction. In a decision handed down February 24, 1941, the issue was determined adversely to petitioners' contention. *Dumas* v. *Smith, Chancellor*, 201 Ark. 1057, 147 S. W. 2d 1013. Concluding paragraph in that opinion is copied in the footnote.[1]

A master was named September 26, 1940. In the order of appointment there is reference to ". . . the motion for a master and an accounting heretofore filed by the defendants . . . and the amendment to their answer." In the amendment (May 20, 1939) the right was asked to strike §§ 7, 8, 9, and 11 of their motion wherein appointment of an accountant master was prayed. Effect of the amendment was to eliminate the words, ". . . and that an accountant . . . be appointed to state an account between the heirs, of their property." There was the further statement that . . . "[defendants] deny that plaintiff is entitled to a lien on the land described in his complaint and to subrogation for moneys alleged to have been paid. . . ."

---

[1] "It is our view that the chancellor in ordering an accounting was proceeding in accordance with the law announced in the opinion of this court in *Owen* v. *Dumas* . . . and the directions contained in the mandate which followed."

There were other pleadings which we deem it unnecessary to identify.

. . . . .

While the deed obtained by W. E. Owen to 200 acres was cancelled in the decision of May 13, 1940, necessary effect of our opinion in the case denying prohibition was to approve the chancellor's course requiring an account to be stated. Appellants insist the issues are *res judicata;* that with filing of our mandate the litigation necessarily terminated and thereafter all rights were referable to the will of E. L. Owen. They also contend that no view of the transaction could justify the chancellor in impressing a lien upon lands of the estate to reimburse W. E. Owen.

Other defenses are that many items W. E. Owen claims to have paid were barred by limitation; that certain findings affecting the amount adjudged to Owen were not supported by a preponderance of the evidence, and that provisions of the will (as summarized in the Owen-Dumas opinion, 200 Ark. 601, 140 S. W. 2d 104) permitting the testator's widow ". . . to dispose of the property and make title, including fee simple deeds to the real property, whenever she deemed it necessary for her support and maintenance, or whenever she deemed it advisable for the benefit of the estate," did not warrant the chancellor's construction. Principal defense is that "there can be no charge against the estate of a deceased party unless the claim has been first presented to the executor or administrator, or to the probate court, for allowance, . . ." and this was not done by W. E. Owen.

Conceding correctness of the general principles expressed by appellants, we think an answer is to be found in the fact that, although the amendment of May 20, 1939, nullified the prayer for appointment of an accountant, and withdrew the offer to pay "all indebtedness that had accrued under the will," the request made by defendants for appointment of a master remained unimpaired. We do not understand it was ever contended by appellants that moneys advanced by W. E.

Owen to his mother or paid on her account *within the will's terms* should not be repaid. Certainly it was the testator's purpose to permit his widow (within the limitations prescribed) to handle the property without recourse to any court. The decree questioned by this appeal is inexact in declaring a lien in appellee's favor "against the estate of E. L. Owen." A more appropriate expression, perhaps, would have been that the lands included in the estate, were, in the circumstances shown, subject to charges authorized by the will. These charges, whether created by direct action of the widow, or arising through subrogation, were (if not inconsistent with the testator's plan) transactions contemplated when E. L. Owen looked into the future and visualized emergencies that might arise; and, to the extent of the obligations approved by the chancellor, the lands were subjected to the debts.

Final question relates to sufficiency of the evidence. The decree recites that the cause was submitted upon the master's report, pleadings and evidence in the original cause, "together with the additional evidence taken orally before the master and properly transcribed and filed as a part of the record in this cause along with said report."

Although there are references to testimony, that part abstracted does not sustain appellants' contention that the decree was not supported by a preponderance of the evidence.

Affirmed on appeal and cross-appeal.