COLEMAN v. VOLENTINE.

4-8185                                        201 S. W. 2d 592

Opinion delivered April 28, 1947.

*S. L. Richardson*, for appellant.

*Ras Priest,* for appellee.

ROBINS, J. The circuit court sustained a demurrer to appellants' complaint and upon their refusal to plead further entered judgment dismissing same. Appellants seek to reverse that judgment.

Appellants (husband and wife) alleged in their complaint that they were the owners of 2,164.15 acres, a large part of which was farmed in rice and other crops, said land being, at the time of the transactions referred to in the complaint, of the value of $90,000; that there was a first mortgage on 1,777 acres of said tract to secure an indebtedness of $16,620, due to an insurance company, and a second mortgage on the same land to secure an indebtedness of $8,700, due to Marion Dickens; that appellee had acquired both these debts and the liens securing same; that appellants had borrowed the additional sum of $7,000 from appellee and had mortgaged to appellee the remainder of their land to secure same; that appellants owed White River Production Credit Company slightly more than $16,000, which indebtedness had been purchased by appellee; that there was claimed by appellee to be due on all said indebtedness the sum of $46,250 on February 26, 1946; that in the fall of 1945, appellee induced appellants to apply for a loan of $40,000 on said lands, to be used in discharging the debt to appellee, appellee agreeing to take a chattel mortgage on crop, farming equipment and other personal property of appellants to secure the remaining $6,250 of appellants' debt to appellee and also $20,000, which appellee was to furnish appellants to enable them to make and harvest the 1946 crop; that in the meantime suits had been filed against one of appellants for sums aggregating $17,000, and that appellee sought to induce appellants to convey the lands to him by stating to appellants that adverse judgments in said suits might prevent them from obtaining the $40,000 loan; that on February 26, 1946, at the insistence of appellee, appellants executed and delivered their warranty deed, conveying all said lands to him,

appellee stating that the deed would be merely security for the $40,000 debt until the said loan could be completed, at which time all claims of appellee against the land would be released; that on the same day there was executed by appellant, R. E. Coleman, and appellee a written agreement, the material provisions of which were: That appellants had conveyed their 2,164.15 acre farm to appellee, and appellant, R. E. Coleman, had ''for an agreed balance of $6,250'' transferred all his farm implements to appellee; that appellee would finance the making of rice crop on 700 acres by said appellant, provided said appellant would properly cultivate said crop; that the one-fourth of the proceeds of said crop was to be paid to appellee as rent, the expense of planting, cultivating and harvesting the crop to be repaid to the credit association, which was to lend the money for such expenses, the appellee to be paid his loan of $6,250, and any other advances, and thereupon title to all the personal property to re-vest in said appellant and said appellant to have all the remainder of said crop; the agreement further providing that the deed to the land executed by appellants to appellee should be withheld from record for ten days, ''upon the understanding that if, within that time, party of the second part [appellant] is able to refinance said farms to the amount of $40,000 to be paid to the party of the first part, said deed will be destroyed, and not recorded, and shall become null and void; but this condition shall become void at the end of ten days.''

It was further alleged in the complaint that at the time this instrument was executed it was understood that it was executed only as security for debt, and that ''the only time limit thereon was stated to be in the fall of 1946''; that at the time of entering into said contract it was not the intention of appellee to carry out his agreement, but it was his intention then to sell said land, crops and farming equipment to third parties; that after he obtained said deed and contract appellee did sell and convey said land and did transfer said written agreement to Harry Ward and K. L. Kramer and their wives, on April

15, 1946; that when appellants learned that appellee was attempting to sell the property they brought a suit in chancery court against him and his vendees, seeking to enjoin the sale, and asking that the deed executed by them to appellee be declared a mortgage; that upon learning that the sale had already been consummated by appellee they took a nonsuit as to appellee and continued the suit against the vendees; and that upon final hearing appellants' said suit was by the chancery court dismissed for want of equity.

The prayer of the complaint in the instant case was that appellants recover from appellee $50,000, the difference between $90,000, the alleged value of the lands formerly owned by appellants, and the $40,000 indebtedness due by appellants to appellee.

For reversal it is first argued by appellants that the deed to appellee and the agreement contemporaneously made ought to be construed as a mortgage and that, this being done, there was stated in the complaint a good cause of action for damages, on the theory that appellee, as mortgagee, had sold mortgaged property as his own to the damage of the mortgagors.

We have frequently held that equity will look through the form of a transaction to ascertain the reality thereof and that where a deed or other contract, in form an absolute conveyance, is shown to have been intended by the parties thereto as mere security for debt, it will be so treated by a court of equity and title to the property quieted in the grantor, subject to the lien of the grantee for his debt. *Clark-McWilliams Coal Company* v. *Ward*, 185 Ark. 237, 47 S. W. 2d 18; *Buffalo Stave & Lumber Company* v. *Rice*, 187 Ark. 731, 62 S. W. 2d 2; *Sturgis* v. *Hughes*, 206 Ark. 946, 178 S. W. 2d 236.

But here appellants are not attempting to exercise their equitable right to redeem their property. They did that in the case in chancery court and it resulted in a decree, from which no appeal was taken, adjudging that appellants did not have the right to redeem the land from

appellee's grantees, who had full notice of the contract between the parties to this suit.

Even if their right to assert that the transactions with appellee amounted only to a mortgage is not barred by the chancery decree, appellants are met in a court of law by the fact, appearing from their complaint, that under the written agreement the deed was to be withheld from record so as to enable them to refinance, for only ten days, and that after that time "this condition [the requirement for withholding of deed from record and destruction thereof if the sum of $40,000 was paid to appellee within ten days] shall become void." When, at the end of the ten-day period, appellants had failed to pay this sum, under the plain terms of the agreement, any right of appellants as to the lands, enforceable in a law court, was lost. *Snell* v. *White,* 132 Ark. 349, 200 S. W. 1023; *Inman* v. *Rynearson,* 167 Ark. 238, 267 S. W. 576; *Matthews* v. *Stevens,* 163 Ark. 157, 259 S. W. 736; *Bailey* v. *Frank,* 170 Ark. 610, 280 S. W. 663.

Appellants further contend that the complaint states a cause of action for fraud and deceit. No misrepresentation by appellee as to a past or existing fact is set up in the complaint, but appellants say that fraud is alleged in that part of the complaint by which it is charged that appellee led appellants to believe they would be permitted to redeem the land when all the time he had the intention (concealed from appellants) not to allow appellants to do so.

Ordinarily an action for fraud and deceit may arise only from false representation as to a past or existing situation, but there is authority for the holding that where one makes a false promise, knowing at the time that it will not be kept, the person injured thereby may have relief in action for fraud. However, in the instant case it appears from the complaint that the parties saw fit to commit their agreement for redemption to writing and any oral promise or representation made by appellee was merged in this agreement. "All antecedent propo-

sals and negotiations become merged in a written contract, which cannot be varied by parol testimony.'' (Headnote 1) *Zearing* v. *Crawford, McGregor & Camby Company,* 102 Ark. 575, 145 S. W. 226; *Harrower* v. *Insurance Company of North America,* 144 Ark. 279, 222 S. W. 39; *American Southern Trust Company* v. *McKee,* 173 Ark. 147, 293 S. W. 50; *Lane* v. *Smith,* 179 Ark. 533, 17 S. W. 2d 319. Hence no liability against appellee may be predicated on any promise not set forth in the written agreement.

Since it is not charged in the complaint that appellee violated any part of the written agreement between the parties, it follows that the complaint did not state a cause of action at law.

The judgment of the lower court is affirmed.